IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHAEL C. SITZMAN, ) | 7:11CV5006 |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM |
| v. ) | AND ORDER |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

Plaintiff, Michael C. Sitzman, brings this suit challenging the Social Security Commissioner's final administrative decision denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*[1] For the reasons discussed below, the Commissioner's decision will be affirmed.

### *I. BACKGROUND*

Plaintiff filed his application for benefits on December 13, 2007, after being seriously injured in a motor vehicle accident (Tr. 141–143, 157-168).[2] His claim was denied initially on July 8, 2008, with the following explanation:

> You said that you are disabled due to a closed head injury, broken left arm, right arm hyperextension and multiple rib fractures. You also report memory difficulties.

---

[1] Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's final administrative decisions under Title II.

[2] The transcript ("Tr.") or administrative record was electronically filed by the Commissioner and docketed as filing 7.

> The evidence shows that you have received treatment and care for these conditions. Hospitalization, surgery, medication and rehabilitation services have been part of your ongoing treatment. It is difficult for you to complete detailed and complex tasks. Yet, you have the ability to understand and follow simple instructions. Although your fractures have healed, it is hard to lift or carry heavier objects or to work over the shoulder level. You can move about in a satisfactory manner.
>
> We realize that your medical conditions prevent you from doing your past jobs. However, you have the ability to perform other types of work duties that can be learned in a short amount of time and involves only light lifting and occasional overhead tasks.
>
> We have considered your age of 48 years and 12 years of education in determining that you can do other types of work.

(Tr. 71-74) When the claim was denied on reconsideration for substantially the same reasons (Tr. 78-81), Plaintiff requested a hearing before an administrative law judge ("ALJ"). The hearing was held on October 22, 2009 (Tr. 36-56). On January 8, 2010, the ALJ issued an unfavorable decision (Tr. 15-28). The Appeals Council denied Plaintiff's request for review on May 6, 2011 (Tr. 1-5), and this action followed.

### A. *The ALJ's Findings*

The ALJ evaluated Plaintiff's claim according to the 5-step sequential analysis prescribed by the Social Security Regulations, *see* 20 C.F.R. § 404.1520(a)(4),[3] and

---

[3] "At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the [residual functional capacity ('RFC')] to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past

-2-

made these findings:

    1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

    2. The claimant has not engaged in substantial gainful activity since October 13, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).

    3. The claimant has the following severe impairments: closed head injury, cognitive deficit, and status-post left upper extremity fracture (20 CFR 404.1520(c)).

    4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

    5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, can sit, stand and/or walk 6 hours in an 8 hour workday; can occasionally climb ramps and stairs; can occasionally stoop, kneel, crouch, crawl; cannot climb ropes, ladders, or scaffolds or balance; can occasionally reach overhead with the dominant right upper extremity; can rarely reach overhead with the left upper extremity; must avoid concentrated exposure to wetness, unprotected heights, and dangerous moving machinery. In addition, he can perform simple repetitive tasks (20 CFR 404.1567(b)).[4]

---

relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform." *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006) (footnote omitted).

[4] A claimant's RFC represents the most he can do despite the combined effect of his credible limitations. *See* 20 C.F.R. §§ 404.1545. The ALJ is responsible for assessing a claimant's RFC based on all the relevant evidence, including the claimant's description of his limitations, the medical records, and observations of the claimant's physicians and others. *See Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). "The RFC is used at both step four and five of the evaluation process, but

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant . . . was 47 years old, which is deemed as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 13, 2007 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 20-28)

### B.  *Statement of Issues*

Plaintiff contends that the ALJ failed to make a proper RFC assessment because he did not incorporate all physical and mental limitations noted in the medical opinions and did not make a proper credibility determination.

---

it is determined at step four, where the burden of proof rests with the claimant." *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).

*C. Statement of Facts*

Plaintiff was hospitalized at Good Samaritan Hospital in Kearney, Nebraska, following his accident on October 13, 2007 (Tr. 265, 269). An examining physician diagnosed a closed head injury, severe chest trauma with multiple rib fractures, a fractured left arm, and a fractured right shoulder (Tr. 265, 267, 271). A CT scan of Plaintiff's head revealed chromatic subarachnoid hemorrhage[5] with a small epidural or subdural hematoma; diffuse cerebral edema was suggested as well (Tr. 215, 263). An intracranial pressure monitor was surgically placed (Tr. 275) and Plaintiff also underwent surgical repair of a fracture of the left humerus (Tr. 261).

Plaintiff was discharged from Good Samaritan and transferred to Madonna Rehabilitation Hospital in Lincoln, Nebraska, for further treatment on November 1, 2007 (Tr. 311). On November 29, 2007, an examiner at Madonna found Plaintiff could sit, stand, and walk, but had tenderness and limited range of motion in his left shoulder; X-rays of Plaintiff's left shoulder showed excessive ossification (Tr. 311-313). Plaintiff received inpatient rehabilitation treatment until December 17, 2007, and then began a five-week course of occupational and physical therapy with Kelly Thelen, APRN, through Madonna's outpatient clinic (Tr. 379). At his initial therapy session on December 20, 2007, Plaintiff reported left shoulder pain but denied other complaints (Tr. 379).

On January 24, 2008, Ms. Thelen noted that Plaintiff would be discharged from treatment the following day, but would continue therapy with providers who were closer to his home (Tr. 505). Ms. Thelen also completed a form indicating that Plaintiff could not return to work (Tr. 327). She noted that Plaintiff continued to experience cognitive deficits based on his brain injury (Tr. 327). In another form completed that day, Ms. Thelen indicated that Plaintiff could sit for four hours and

---

[5] Subarachnoid hemorrhage is bleeding in the area between the brain and the thin tissues that cover the brain. *See* United States National Library of Medicine, PubMed Health, at http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001720/.

stand or walk for one hour during an eight-hour workday, lift or carry twenty pounds at most, and occasionally kneel or reach, but could never climb or perform overhead lifting (Tr. 328).

Plaintiff presented to Victor Stava, a physicians assistant, for a blood-pressure evaluation on January 28, 2008 (Tr. 334–335). Mr. Stava diagnosed hypertension and prescribed blood-pressure medication (Tr. 335). Plaintiff reported improvement during a follow-up appointment on February 8, 2008 (Tr. 331). Mr. Stava completed an assessment form on February 12, 2008, in which he indicated that Plaintiff was totally disabled from his current job (Tr. 325-326).

Paul Sheets, a physical therapist, evaluated Plaintiff on January 31, 2008 (Tr. 397-398). Plaintiff's main concerns were weakness and reduced range of motion in his left arm (Tr. 397). Mr. Sheets observed that Plaintiff walked without a cane and had fair to good balance, but with severely limited left arm range of motion (Tr. 397). Plaintiff continued to attend regular physical therapy sessions with Mr. Sheets (Tr. 383-384). On March 24, 2008, Mr. Sheets noted that Plaintiff's left shoulder range of motion remained limited, and likely would not improve (Tr. 385). He indicated that Plaintiff would continue with home exercises (Tr. 385).

Eric Hartman, M.D., examined Plaintiff on April 2, 2008 (Tr. 337-338). Dr. Hartman noted that Plaintiff completed outpatient therapy on January 25, 2008, and had ongoing issues with decreased left shoulder range of motion and decreased right arm strength (Tr. 337). He noted that Plaintiff also suffered from significant memory impairment, which made him unfit for work (Tr. 337). Dr. Hartman noted that he would see Plaintiff again in three months for repeat testing (Tr. 337). During a neuropsychology evaluation completed that day, Plaintiff reported performing part-time farmhand duties every day (Tr. 493).

Plaintiff presented to Rebecca Schroeder, Ph.D., for a consultative mental examination on May 18, 2008 (Tr. 399-407). Plaintiff informed Dr. Schroeder that he

lived alone and did not work, except for occasionally helping a friend haul cattle (Tr. 400). Plaintiff claimed he could complete most household activities, although he worked slowly (Tr. 402). Plaintiff reported "slowness in his thinking," and stated that when involved in a conversation he needed a long time to come up with an appropriate response (Tr. 402) He also reported forgetfulness (Tr. 403). Additionally, Plaintiff said his injuries included problems with fine motor movements; he was not able to hold a dinner fork well nor was he able to write well with a pen or pencil (Tr. 403). Plaintiff scored below average on a memory test, but scored well in terms of auditory recognition and working memory, which "indicate[d] good focus and concentration abilities" (Tr. 404). During a clinical interview, Plaintiff appeared alert and coherent and could answer simple and complex orientation questions (Tr. 404). However, Plaintiff appeared to have trouble processing information and expressing himself, and had a noticeable speech impediment (Tr. 405). Dr. Schroeder felt that Plaintiff could understand and remember short and simple instructions, although he might need to have instructions repeated at times (Tr. 406). She also opined that Plaintiff could relate appropriately to coworkers and supervisors, and could adapt to changes in his environment, but might require "more than ordinary supervision when he is first learning a new task" (Tr. 406). Dr. Schroeder diagnosed amnesic disorder due to a closed head injury, and major depressive disorder, single episode, mild (Tr. 407).

Christopher Milne, Ph.D., a state Disability Determination Services (DDS) psychologist, completed a mental RFC assessment on May 28, 2008, without examining Plaintiff (Tr. 409-427). Dr. Milne felt Plaintiff was moderately limited at sustaining an ordinary routine without special supervision and handling more detailed work instructions, but could handle simple instructions (Tr. 426). On September 18, 2008, Linda Schmechel, Ph.D., a second DDS psychologist, affirmed Dr. Milne's assessment (Tr. 462).

Mr. Sheets evaluated Plaintiff again on June 23, 2008 (Tr. 429-431). Plaintiff denied pain, but complained of reduced range of motion in his left shoulder (Tr. 429). Plaintiff told Mr. Sheets he "can do everything [at home,] it is just slow, that is just

the way it is" (Tr. 429). He claimed he sometimes drove to town to get his mail, visit the bank, and complete other errands (Tr. 429). He claimed his memory was "okay," although he required assistance with his finances (Tr. 429). Upon examination, Plaintiff had reduced range of motion in his left shoulder, reduced strength in both shoulders, and normal arm and leg strength (Tr. 430-431). Mr. Sheets also observed that Plaintiff could get in and out of a chair without assistance and had "good stamina to be able to complete tasks" (Tr. 431).

Roderick Harley, M.D., a DDS physician, completed a physical RFC assessment on July 8, 2008, without examining Plaintiff (Tr. 453-461). Dr. Harley felt that Plaintiff could lift and carry up to ten pounds frequently and up to twenty pounds occasionally, and could stand, walk, or sit for up to six hours in an eight-hour workday (Tr. 454); that Plaintiff could occasionally climb, kneel, crouch, and crawl, but could never stoop (Tr. 455); that Plaintiff could occasionally perform over-shoulder work with his right arm and could rarely perform over-shoulder work with his left arm (Tr. 456); and that Plaintiff should avoid concentrated exposure to moisture and workplace hazards (Tr. 457). On September 18, 2008, A. Hohensee, M.D., another DDS physician, affirmed Dr. Harley's assessment (Tr. 463).

Dr. Hartman examined Plaintiff again on July 17, 2008 (Tr. 466-467). He noted that Plaintiff showed nice improvement during recent neuropsychological testing, although he still had some impairments in memory and executive functions (Tr. 466). Upon examination, Plaintiff had a fairly normal gait and could stand on one foot without difficulty, but seemed to have "high level" balance issues (Tr. 466). Plaintiff's strength was "fairly intact throughout," although he still had reduced left-shoulder range of motion (Tr. 466). Dr. Hartman noted that Plaintiff would complete a "driving rehabilitation" program to extend his driving capabilities (Tr. 466). He also referred Plaintiff for a functional capacity evaluation (Tr. 467).

Bob Lueke, a physical therapist, completed the functional capacity evaluation later that day (Tr. 469-473). Plaintiff told Mr. Lueke that he was independent in terms

of daily activities, and continued to drive, although he did not feel safe on main roads (Tr. 469). Plaintiff complained of left shoulder pain and reduced range of motion, and right arm weakness (Tr. 469). Mr. Lueke observed that Plaintiff walked with a slow gait and a "just noticeable" limp, and exhibited "slight loss of balance/coordination" when turning and when transferring to a seated position (Tr. 470). Plaintiff had reduced range of motion in his left shoulder, and reduced strength in both shoulders (Tr. 471). Mr. Lueke concluded that Plaintiff could: sit, stand, squat, and kneel without limitation; walk "a significant distance" at his own pace; lift up to sixty pounds "within his power range"; and carry fifty pounds at waste level for up to fifty feet (Tr. 534). Mr. Lueke found that Plaintiff could barely reach above head height with his left arm, and could lift up to ten pounds overhead with his right arm (Tr. 534). Mr. Lueke also noted that Plaintiff scored substantially below average for timed tasks involving his right hand, which would cause difficulty in jobs requiring a high productivity quotas and bilateral fine-finger dexterity (Tr. 534).

Plaintiff completed a driving evaluation on October 21, 2008 (Tr. 537-538). Plaintiff demonstrated slow reaction times during a driving-simulation test, but completed a behind-the-wheel evaluation "without difficulty" (Tr. 538). He was cleared to drive "without restrictions" (Tr. 538)

On February 4, 2009, William Abraham, M.D., completed an "independent peer review" of Plaintiff's work limitations at the request of Plaintiff's disability insurance provider (Tr. 519-522).[6] Dr. Abraham indicated that Mr. Lueke's July 2008 assessment seemed flawed to the extent that it found Plaintiff could perform medium to heavy work (Tr. 521). Dr. Abraham instead concluded that Plaintiff "would be best suited for light duty activity at the moment, of up to 25 pounds of lifting and carrying occasionally and 10 pounds frequently, and occasional to frequent use of the hands for repetitive and fine motor hand activity. He is limited to no reaching above chest

---

[6] It appears from Dr. Abraham's report letter to the insurer that he merely reviewed Plaintiff's medical records.

-9-

level with the left upper extremity, occasionally to frequent standing and walking, occasional stair climbing, and unrestricted sitting. Reaching at and below chest level with the left upper extremity is restricted to an occasional basis. Reaching with the right upper extremity at all levels is unrestricted. . . . [I]t is recommended he not perform activity at unprotected heights and around hazardous or dangerous machinery." (Tr. 521-522)

Magda Beauchamp, M.D., who worked in the same office as Dr. Hartman, examined Plaintiff on July 10, 2009 (Tr. 540). Dr. Beauchamp noted that recent neuropsychological testing showed that Plaintiff "was approaching average range levels cognitive-wise," although he had persistent but "very mild" cognitive limitations, which could be influenced by a lack of activity (Tr. 540). Dr. Beauchamp told Plaintiff she would help him pursue vocational rehabilitation (Tr. 540).

On August 24, 2009, Plaintiff saw Mark Serbousek, M.D., for evaluation of hypertension (Tr. 507-508). Plaintiff stated he was "doing well" and denied any acute complaints (Tr. 507). Dr. Serbousek noted: "Extremity movement exam shows no weakness or paralysis. Gait is observed to be somewhat unsteady and balance seems a little off especially when her first gets up" (Tr. 508). Dr. Serbousek diagnosed stable hypertension and cognitive deficits (Tr. 508). Dr. Serbousek also completed a "medical source document—physical capacity" questionnaire in which he indicated that Plaintiff's symptoms would often interfere with his attention and concentration (Tr. 509). He also indicated that Plaintiff was markedly limited at dealing with work stress, and experienced significant cognitive dysfunction (Tr. 509). Dr. Serbousek did not express any opinions regarding Plaintiff's physical limitations, and stated that "further evaluation and voc rehab" would be needed to determine Plaintiff's ability to return to work (Tr. 509).

During the October 22, 2009 hearing (Tr. 36-56), Plaintiff testified that he lived alone in a modular home on forty acres of land (Tr. 40, 46). He said that he stopped working in October 2007 and that his only income since then has been long term

disability payments (Tr. 40). Plaintiff reported difficulties with his balance and memory (Tr. 41-43). He testified that on a typical day he watched television, cooked meals, and tried to do household chores (Tr. 44). Plaintiff testified that he continued to drive, although his reaction time had slowed (Tr. 45). Plaintiff estimated that the heaviest amount of weight he could lift and carry was fifty pounds (Tr. 47). He claimed he could sit without limitation, stand for about two hours in an eight-hour workday, and walk about one block (Tr. 47). Plaintiff's sister also appeared at the hearing and testified she had noticed since the accident that Plaintiff had problems with balance, memory loss, and confusion at times (Tr. 48).

At the end of the hearing, the ALJ asked a vocational expert to consider a hypothetical claimant who could lift and carry up to twenty pounds occasionally and up to ten pounds frequently, and who could occasionally climb, stoop, kneel, crouch, and crawl (Tr. 52-53). The ALJ also specified that the hypothetical claimant could occasionally reach overhead with his dominant arm, could rarely reach overhead with his other arm, and was limited to simple, repetitive tasks (Tr. 53). The vocational expert testified that the hypothetical claimant could not perform Plaintiff's past work as a machine operator, but could perform the representative jobs of food preparation (2,900 jobs in Nebraska and 387,000 nationwide), janitor (1,600 jobs in Nebraska and 237,000 nationwide), and laundry worker (2,500 jobs in Nebraska and 432,000 nationwide) (Tr. 53-54). The vocational expert also opined that if the hypothetical claimant's limitations also included difficulties with concentration and short term memory, he could not work at any jobs in the national economy (Tr. 54).

## *II. DISCUSSION*

The applicable standard of review is whether the Commissioner's decision is supported by substantial evidence on the record as a whole. See *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). " Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." *Id.* (internal quotations and citations omitted). Evidence that both

supports and detracts from the Commissioner's decision should be considered, but a final administrative decision is not subject to reversal by a reviewing court merely because some evidence in the record may support a different conclusion. *See id.* Questions of law, however, are reviewed de novo. *See Olson v. Apfel*, 170 F.3d 822 (8th Cir. 1999); *Boock v. Shalala*, 48 F.3d 348, 351 n2 (8th Cir. 1995).

### A. Medical Opinions

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). The weight the Commissioner will give to an opinion depends upon (1) whether the source examined the claimant, and, if so, the frequency of examination; (2) whether the source treated the claimant, and, if so, the length, nature, and extent of the treatment relationship; (3) whether the opinion is supported by relevant evidence; (4) whether the opinion is consistent with the record as a whole; (5) whether the source is a specialist; and (6) any other relevant factors. *See* 20 C.F.R. § 404.1527(c)(2) (2012).[7]

The ALJ "accord[ed] little weight to Dr. Serbousek's opinion that the claimant cannot work (Exhibit 21F, page I.)." (Tr. 25) The ALJ noted that "[i]n a one page check-box form, in July 2008, Dr. Serbousek opined that the claimant needed further evaluation before he could answer the question regarding the claimant's prognosis for returning to work (Exhibit 21F, page I)," but "[n]evertheless . . . concluded that the claimant's 'significant cognitive dysfunction' was going to significantly impair his ability to work (Exhibit 21F, page I)." (Tr. 25) The ALJ stated that "Dr. Serbousek's conclusions are on an issue specifically reserved under the Regulations to the

---

[7] Section 404.1527 was amended effective March 26, 2012. The factors for weighing medical opinions were previously listed in subsection (d).

-12-

Commissioner (20 CFR 404. 1427(e) and SSR 96-5p)." (Tr. 25) The ALJ also found that "Dr. Serbousek'[s] opinions are not supported by the claimant's own testimony and the medical records, but apparently are based solely on the claimant's subjective statements." (Tr. 25) Plaintiff does not contest these findings or the ALJ's conclusion that "Dr. Serbousek's opinions are neither controlling nor persuasive." (Tr. 25)

The ALJ "also accord[ed] little weight to [Kelly Thelen's][8] January 24, 2008 opinion that the claimant cannot work (Exhibit 6F)." (Tr. 25) The ALJ observed that Ms. Thelen had opined "in a four page check-box form . . . that the claimant was unable to drive, unable to sit more than 4 hours in an 8 hour workday, and unable to ever lift 21-50 pounds." (Tr. 25) The ALJ "accord[ed] this opinion little weight because the claimant's testimony and the record establish the claimant is able to drive, sit for an unlimited amount of time, and lift 50 pounds." (Tr. 25) Plaintiff does not contest the ALJ's determination that Ms. Thelen's opinion is entitled to little weight as being "inconsistent with the claimant's testimony regarding his activities of daily living and the medical record." (Tr. 25)[9]

The ALJ next noted that Dr. Abraham "opined that the claimant could lift and/or carry 25 pounds occasionally and 10 pounds frequently, could occasionally to frequently stand and/or walk, with no restrictions on sitting, could occasionally to

---

[8] The ALJ erroneously attributed this opinion to "Dr. Stava" [sic] (Tr. 25). Neither Ms. Thelen nor Mr. Stava is an "acceptable medical source" within the meaning of the Social Security regulations. "Although the factors in [former] 20 CFR 404.1527(d) . . . explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.'" SSR 06-03p, 2006 WL 2329939 , at *4 (Soc. Sec. Admin., Aug. 9, 2006).

[9] The ALJ noted, however, that to the extent Ms. Thelen "indicated that [s]he expected the claimant's restrictions to be temporary and that the claimant has difficulty with divided attention and decreased problem solving and memory," the opinion would be accorded "some weight and take[n] into account [in] the claimant's limitation to simple repetitive tasks . . . (Exhibit 6F, page 4)." (Tr. 25)

frequently use his hands for repetitive and fine motor hand activity, but could not reach above chest level with the left upper extremity, and could not be exposed to unprotected heights or hazardous or dangerous machinery (Exhibit 22F, pages 12-13)." (Tr. 25) The ALJ stated: "While I find additional restrictions on the claimant's residual functional capacity, Dr. Abraham's opinion is generally consistent with my findings, is supported by the record as a whole, and I accord it substantial weight." (Tr. 25-26). Despite the ALJ's general acceptance of Dr. Abraham's opinion, not all of the physical limitations identified by the doctor were incorporated into the ALJ's RFC assessment. In particular, Plaintiff complains that the ALJ "placed no limits at all on [his] ability to use his hands for repetitive and fine motor hand activity; limited the claimant to 'rarely' (rather than 'never') using his left arm above shoulder level (rather than chest level); and placed no limits on the claimant's ability to use his left arm for reaching at or below chest level." (Filing 11-1 at 14)

"Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). "Moreover, '[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.'" *Id.* (quoting *Black*). "Given the ALJ's specific references to findings set forth in Dr. [Abraham's report], . . . it [is] 'highly unlikely that the ALJ did not consider and reject'" Dr. Abraham's opinions regarding Plaintiff's ability to reach with his left arm and to use his hands. *Id.* (quoting *Black*). The ALJ did specifically reference Dr. Abraham's opinion that Plaintiff "is limited to no reaching above chest level with the left upper extremity," but this opinion is slightly at odds with the opinions of the state agency consulting physicians, Dr. Harley and Dr. Hohensee, to which the ALJ also gave "substantial weight" (Tr. 26).[10] "[T]he

---

[10] "[T]he administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . ., as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the Social Security Administration]." 20 CFR § 404.1527 (e)(2)(ii). In this case, the ALJ explained that

-14-

ALJ must resolve conflicts among the various opinions." *Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009). The ALJ's decision to accept the state agency physicians' opinions that Plaintiff is limited to rarely reaching overhead with his left upper extremity, and, implicitly, to reject Dr. Abraham's more restrictive opinion, was not an abuse of discretion.[11]

Regarding Plaintiff's mental residual functional capacity, the ALJ gave "great weight" to the opinion of the consulting psychologist, Rebecca Schroeder, Ph.D. The ALJ explained:

> Dr. Schroeder performed a consultative psychological examination on the claimant on May 8, 2008 (Exhibit 10F). She opined that the claimant showed good skills in the area of concentration and focus, including understanding and remembering short and simple instructions (Exhibit 10F, page 8). She noted that he described himself as being able to carry out most types of household activities while living alone, including some remodeling projects (Exhibit 10F, page 4). She diagnosed the claimant with amnestic disorder due to closed head injury and mild single episode depressive disorder, with a Global Assessment of Functioning (GAF) rating of 60 (Exhibit 10F, page 9). Dr. Schroeder's opinion is generally consistent with my findings, is supported by the record and the claimant's own admissions regarding his ability to perform activities of daily living, and therefore, I accord it great weight.

---

"the State Agency medical consultants at the reconsideration and initial levels . . . provided specific reasons for their opinions about the claimant's residual functional capacity showing that the opinions were grounded in the evidence in the case record, including careful consideration of the medical evidence and the claimant's allegations about her [sic] symptoms and limitations," and that "[their] opinions regarding the claimant's physical limitations are generally consistent with my findings . . .." (Tr. 26)

[11] The ALJ also accepted the state agency consulting physicians' opinions that Plaintiff is limited to occasional reaching with his right arm below shoulder level, rather than Dr. Abraham opinion that Plaintiff's ability to reach with his right arm at all levels is unrestricted.

(Tr. 25) Plaintiff argues that the ALJ "failed to incorporate all of Dr. Schroeder's limitations, specifically the claimant's need for 'more than ordinary supervision' and slow processing speed." (Filing 11-1 at 15)

Dr. Schroeder actually stated that Plaintiff "may require more than ordinary supervision *when he is first learning a new task*" (Tr. 406 (emphasis added)). By limiting Plaintiff to "simple repetitive tasks," the ALJ sufficiently accommodated Plaintiff's potential difficulties with learning new tasks. Although Dr. Schroeder observed that Plaintiff "seemed to have some trouble with processing information" and "[h]is thinking seemed to be slow" (Tr. 405), she believed Plaintiff is "able to understand and remember simple instructions" (Tr. 406) and "show[s] good skills in the area of concentration and focus" (Tr. 406). Again, the ALJ's RFC assessment sufficiently incorporated this limitation by stating that he can perform "simple repetitive tasks." *See, e.g., Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (hypothetical question to vocation expert which assumed ability to do simple, routine, repetitive work adequately captured claimant's "often" deficiencies in concentration, persistence or pace).

The ALJ also accorded "great weight" to the opinion of the state agency psychologist, Christopher Milne, Ph.D., as being "consistent with the record as a whole." (Tr. 26) The ALJ stated Dr. Milne "opined that the claimant could perform simple repetitive tasks, with moderate limitations on his ability to sustain an ordinary routine without special supervision (Exhibits 12F, pages 1-2; 13F, page 13)." (Tr. 26) Plaintiff argues Dr. Milne further opined that Plaintiff is "moderately limited" in his abilities to understand, remember, and carry out detailed instructions, to perform activities within a schedule, maintain regular attendance, and be punctual, to sustain an ordinary routine without special supervision, to complete a normal workday and workweek without interruptions, and to perform at a consistent pace. (Tr. 409-410) None of these limitations were specifically included in the ALJ's RFC assessment.

As the Commissioner points out, however, the limitations listed by Plaintiff are found in section I of SSA Form 4734-F4-SUP ("Mental Residual Functional Capacity Assessment"), which contains Dr. Milne's "summary conclusions" (Tr. 426-27). This section of the form "is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." Soc. Sec. Admin. Program Operations Manual System (POMS) § DI 24510.060.B.2. Section III of the form is where "the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." POMS § DI 24510.060.B.4. "Because the actual assessment is contained in Section III, courts have consistently held that it is not error for an ALJ to omit restrictions identified in Section I in his RFC analysis." *Kane v. Astrue*, 2011 WL 3353866, *3 (N.D.Ohio 2011) (citing cases).

### B. Plaintiff's Credibility

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). To analyze a claimant's subjective complaints, the ALJ considers the entire record including the medical records, third party and the claimant's statements, and factors such as: 1) the claimant's daily activities; 2) the duration, frequency and intensity of pain; 3) dosage, effectiveness, and side effects of medication; 4) precipitating and aggravating factors; and 5) functional restrictions. *See* 20 C.F.R. § 404.1529; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

The ALJ in this case found "the claimant's subjective complaints and alleged limitations are not fully persuasive" (Tr. 26) and he offered this explanation:

> In assessing the claimant's credibility, his testimony that he has not worked since the October 13, 2007 auto accident conflicts with a July 10, 2009 record that he reported working part-time informally as a ranch hand caring for cattle and he reported that he did that work

> "voluntarily" (Exhibit 23F, page 1). In addition, earnings records indicate that he may have been working in 2008, and possibly at a substantial and gainful activity level (Exhibit 8D, page 2). Further, the claimant's ability to work as a ranch hand seems inconsistent with his testimony that he suffers significant balance and mental deficiency problems. The claimant's testimony regarding his incapacitation appears to be overstated when compared with his presentation to attending physicians and treating physicians who noted that he was managing his activities of daily living with conservative treatment. The claimant also admitted in testimony that he is able to drive, go shopping, and do some household chores, which seems inconsistent with impairments as incapacitating as alleged. The claimant's ability to perform these types of routine daily activities suggests that he is capable of performing a variety of daily activities when motivated.

(Tr. 24)

Plaintiff first objects to the ALJ considering his part-time work as a ranch hand, and he argues "[t]here is no indication that this 'work' continued on a sustained basis, the claimant's duties, or the number of hours 'worked.'" (Filing 11-1 at 20) An ALJ may properly consider a claimant's work activity during a period of time in which he alleges disability as a significant factor in finding him not credible. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that [the claimant's] . . . part-time work [was] inconsistent with her claim of disabling pain."). The record showed that Plaintiff worked as an unpaid ranch hand for much of the period in which he alleged disability. In April 2008, Plaintiff informed an evaluator that he performed part-time farm-hand duties every day (Tr. 493). The following month, Plaintiff told Dr. Schroeder that he occasionally helped a friend to haul cattle (Tr. 400). In July 2009, Plaintiff informed Dr. Beauchamp that he was "involved in voluntary part-time duties at a ranch" (Tr. 540). The ALJ did not err in considering this evidence.

Plaintiff next objects to the ALJ's statement that his earnings records indicate he may have been working at gainful employment in 2008. The evidence actually

shows Plaintiff was receiving disability insurance benefits during this period. Although the ALJ drew an improper inference from the earnings records, the error was harmless in light of other evidence mentioned by the ALJ regarding Plaintiff's activities of daily living. *See Cox v. Barnhart*, 471 F.3d 902, 908 (8th Cir. 2006) ("[E]ven if the ALJ had overestimated her capabilities [activities], that would not have shown that his overall credibility decision was flawed because this was only one of the several inconsistencies he identified.").[12]

Finally, Plaintiff argues that "the ALJ failed to note any allegation regarding the need for a slow pace" (filing 11-1), such as when Plaintiff told Mr. Sheets in July 2008 that he could "do everything . . . slow[ly]" (Tr. 429). Although the ALJ did not mention this particular comment, he made a specific finding "[w]ith regard to concentration, persistence or pace, [that] the claimant has moderate difficulties." (Tr. 22) The ALJ found that Plaintiff "has difficulty performing complex tasks" and stated that he had "taken [this] into account" in assessing Plaintiff's RFC (Tr. 22) The ALJ also stated that "[t]he longitudinal medical evidence shows significant improvement in the claimant's physical and mental impairments over time" (Tr. 24). The ALJ noted, for example, that in July 2009 Dr. Beauchamp "reported that the claimant 'was approaching average range levels cognitive-wise' and that his cognitive limitations were 'subtle' and 'mild' and impacted by lack of mental activity, with the claimant reporting boredom and a desire to increase his responsibilities (Exhibit 23F, page 1)" (Tr. 24). Because substantial evidence supports the ALJ's finding that Plaintiff can perform "simple repetitive tasks," this argument regarding Plaintiff's need to work at a slow pace is without merit.

---

[12] Plaintiff also points to his history of consistent earnings prior to his alleged disability, but this positive consideration does not outweigh the other factors set forth by the ALJ in support of his credibility finding. *See, e.g., Masterson v. Barnhart*, 363 F.3d 731, 739 (8th Cir. 2004) (despite good work record at a physically demanding job, substantial evidence supported finding that claimant was not credible and was not totally disabled).

-19-

### *III. CONCLUSION*

The ALJ's decision is supported by substantial evidence on the record as a whole and is not contrary to law. Accordingly,

IT IS ORDERED that the decision of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g). Final judgment will be entered by separate document.

April 25, 2012.                     BY THE COURT:

                                    *Richard G. Kopf*
                                    Senior United States District Judge

---

\*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.